UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GALE M. BEEMAN,

                Petitioner,              Case No. 1:08-cv-775

v.                                         Honorable Paul L. Maloney

MARY K. BERGHUIS,

                Respondent.
_____/

**OPINION**

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations & Procedural History**

Petitioner is incarcerated in the E.C. Brooks Correctional Facility. Petitioner was charged in Muskegon County with sexually molesting his daughter on three separate occasions between 2001 and 2004. In each of three separate complaints, Petitioner was charged with second-degree criminal sexual conduct (CSC II) and being a fourth habitual offender. Petitioner also was charged with failing to register as a sex offender. On August 31, 2004, Petitioner pleaded nolo contendere in the Muskegon County Circuit Court to three counts of second-degree criminal sexual conduct, third felony offense. In exchange for his plea, the prosecutor dismissed the charge of failing to register as a sex offender and the fourth habitual offender charges. (Plea Hearing transcript (Plea Tr.), 2-3, docket #1-9.) The parties agreed to the admission of the police report to be used as the factual basis for the plea. (Plea Tr., 11.) The police report also was used in preparing the Presentence Investigation Report (PSIR). The following facts included in the PSIR were taken from the police report: "Ms. Gale reported that Kambria stated that her father told her that if she told anyone, he would hurt or kill her mother. Kambria further stated that when her mother asked her what was happening, Kambria was afraid that her father would kill her mother so she said nothing was happening." (PSIR, 3, docket #1-9.)

The sentencing hearing was held on September 20, 2004. During the hearing, defense counsel objected to the scoring of Offense Variable (OV) 7 at 50 points. (Sentencing Hearing Transcript (SH Tr.), 4, docket 1-9.) Offense Variable 7 is for "Aggravated Physical Abuse." The offense variable is to be scored 50 points when "[a] victim was treated with sadism, torture, or excessive brutality or conduct designed to substantially increase the fear and anxiety a victim suffered during the offense." MICH. COMP. LAWS § 777.37(1)(a). The trial court stated that

Petitioner's threat to kill the victim's mother was sufficient to constitute terror. (SH Tr., 4.) The prosecutor cited an unpublished Michigan Court of Appeals decision for the proposition that 50 points is an appropriate score when the defendant threatened physical violence against the victim or the victim's family if the victim disclosed the sexual abuse. (SH Tr., at 4-5.) The trial court sentenced Petitioner as a third habitual offender to concurrent prison terms of twelve-and-a-half to thirty years. (SH Tr., at 8).

Petitioner filed an application for leave to appeal in the Michigan Court of Appeals raising two claims of error. First, Petitioner claimed that the trial court failed to properly respond to his challenge to the presentence report as it pertained to OV 7. Second, he claimed that the trial court erred when it a assigned a value of 50 points to OV 7. The Michigan Court of Appeals denied Petitioner's application for leave to appeal on October 25, 2005, for lack of merit in the ground presented. Petitioner filed an application for leave to appeal in the Michigan Supreme Court raising the same two claims he presented in the Michigan Court of Appeals, as well as the following new claims: (1) ineffective assistance of trial counsel for failing to object to the "double counting" of PRV 7 and OV 7; (2) ineffective assistance of appellate counsel for failure to raise meritorious issues on direct appeal;  (3) Petitioner was subjected to improper "double counting" of scoring variables when the same conduct was scored under both PRV 7 and OV 13; and (4) Petitioner is entitled to resentencing because improper judicial fact finding increased his sentence in violation of his right to trial by jury. The Michigan Supreme Court denied Petitioner's application for leave to appeal on April 28, 2006, because the court was not persuaded that the questions presented should be reviewed.

On October 10, 2006, Petitioner filed a motion for relief from judgment in the Muskegon County Circuit Court, raising the following claims:

I. THE TRIAL COURT IMPROPERLY SCORED DEFENDANT TO OV 7, AND DOUBLE COUNTED PRV 7 WHICH VIOLATED DEFENDANT'S MICHIGAN AND US CONSTITUTIONAL RIGHTS.

II. THE TRIAL AND APPELLATE COUNSEL MADE ERRORS SO SERIOUS THAT THEY WERE NOT FUNCTIONING AS THE COUNSEL GUARANTEED TO THE DEFENDANT BY THE SIXTH AMENDMENT: AND DUE TO THEIR DEFICIENT PERFORMANCE THEY PREJUDICED THE DEFENDANT OF A FAIR RESOLUTION OF THE CASE.

III. THE DEFENDANT IS ENTITLED TO RESENTENCING DUE TO IMPROPER JUDICIAL FACT FINDING INCREASED HIS AUTHORIZED MAXIMUM SENTENCE IN VIOLATION OF HIS RIGHT TO TRIAL BY JURY.

IV. DEFENDANT WAS DENIED HIS RIGHT TO COUNSEL WHERE THE PROSECUTOR WAS PERMITTED TO CONFER PRIVATELY WITH THE SENTENCING JUDGE WITHOUT DEFENDANT OR HIS ATTORNEY BEING PRESENT.

V. THE TRIAL COURT ERRED IN ASSESSING ATTORNEY FEES AS PART OF THE JUDGMENT OF SENTENCE. FURTHER, THE ASSESSMENT OF ATTORNEY FEES IS IMPROPER BECAUSE DEFENDANT IS INDIGENT.

The court denied Petitioner's motion on October 19, 2006. The Michigan Court of Appeals denied Petitioner's applications for leave to appeal on May 30, 2007 and his motion for reconsideration on July 13, 2007. The Michigan Supreme Court subsequently denied Petitioner's application for leave to appeal on May 7, 2008 and his motion for reconsideration on July 29, 2008. Each of the state courts found that Petitioner failed to meet the burden of establishing entitlement to relief under MICH. CT. R. 6.508(D).

In his application for habeas corpus relief, Petitioner essentially raises the same claims presented in his motion for relief from judgment, with the exception of Claim III, which is not included in his habeas petition. His claims are as follows:

I. The trial court improperly scored Defendant to OV 7 and double counted PRV 7 which violated Defendant's Michigan and Constitutional rights.

II. The trial and appellate counsel made errors so serious that they were not functioning as the counsel guaranteed to the Defendant by the sixth Amendment[;] and due to their deficient performance they caused undue prejudice to the Defendant and the right to a fair resolution of this case.

III. Defendant was denied his right to counsel where the prosecutor was permitted to confer with the sentencing judge, **PRIVATELY**, without Defendant or his attorney [sic] present.

IV. The trial court erred in assessing attorney fees as part of the judgment of sentence. Furthermore, the assessment of attorney fees is improper because the Defendant is indigent.

## **Standard of Review**

This action is governed by the Antiterrorism and Effective Death Penalty Act, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court

of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Bailey*, 271 F.3d at 655; *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000). "Yet, while the principles of 'clearly established law' are to be determined solely by resort to Supreme Court rulings, the decisions of lower federal courts may be instructive in assessing the reasonableness of a state court's resolution of an issue." *Stewart v. Erwin*, 503 F.3d 488, 493 (6th Cir. 2007). The inquiry is "limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time [the petitioner's] conviction became final." *Onifer v. Tyszkiewicz*, 255 F.3d 313, 318 (6th Cir. 2001). A decision of the state court may only be overturned if (1) it applies a rule that contradicts the governing law set forth by the Supreme Court, (2) it confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a different result; (3) it identifies the correct governing legal rule from the Supreme Court precedent but unreasonably applies it to the facts of the case; or (4) it either unreasonably extends a legal principle from Supreme Court precedent to a new context where it should not apply or unreasonably refuses to extend a principle to a context where it should apply. *Bailey*, 271 F.3d at 655 (citing *Williams*, 529 U.S. at 413); *see also Bell*, 535 U.S. at 694; *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003). A federal habeas court may not find a state adjudication to be "unreasonable"

"simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Williams*, 529 U.S. at 411; *accord Bell*, 535 U.S. at 699. Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable." *Williams*, 529 U.S. at 410.

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

**Discussion**

I. <u>Sentencing Guideline Scoring: Ground I</u>[1]

Petitioner claims that the trial court improperly scored fifty points for OV 7 when there was no evidence that the victim was treated with sadism, torture, excessive brutality or conduct designed to substantially increase her fear or anxiety during the offense. Petitioner argues that even

---

[1] With the exception of Petitioner's first ground for relief, his claims appear to be procedurally defaulted because they were raised for the first time on direct appeal in his application for leave to appeal in the Michigan Supreme Court or in his motion for relief from judgment, which was rejected by the state courts pursuant to MICH. CT. R. 6.508(D). However, federal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits. *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural-bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423-24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)). Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default. *See Cone v. Bell*, 243 F.3d 961, 971 (6th Cir. 2001), *rev'd on other grounds*, *Bell v. Cone*, 535 U.S. 685 (2002); *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

if he made the alleged threats, there is no evidence that the conduct occurred "during the offense," as required by the statute.  Petitioner contends that if anything, his threats should have should have been scored fifteen points under OV 19, which pertains to "a threat to the security of a penal institution or court or interference with the administration of justice or the rendering of emergency services."  Petitioner further claims that the trial court engaged in improper "double counting" in scoring the sentencing guidelines.  In addition to the three felony convictions at issue in this case, Petitioner had three previous felony convictions.  Petitioner claims that the trial court erred by using his past and present convictions in scoring more than one Prior Record Variable (PRV) or OV.

Claims concerning the improper scoring of sentencing guidelines are state law claims and are typically not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cheatham v. Hosey*, No. 93-1319, 1993 WL 478854, at *2 (6th Cir. Nov. 19, 1993) (departure from sentencing guidelines is an issue of state law, and, thus, not cognizable in federal habeas review); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law).  There is no constitutional right to individualized sentencing.  *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors are generally not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Koras v. Robinson,* 123 F. App'x 207, 213 (6th Cir. Feb. 15, 2005) (citations omitted). *See also Doyle*, 347 F. Supp. 2d at 485 (a habeas court could set aside, "on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (Citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Koras,* 123 F. App'x at 213 (quoting *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972)*; Townsend v. Burke,* 334 U.S. 736, 741 (1948).

The trial court rejected Petitioner's claims concerning the scoring of the sentencing guidelines, stating:

> Defendant first argues that the trial court improperly scored offense variable 7 on the sentence guidelines sheet at 50 points. The court has already ruled against defendant's position on this issue in its opinion and order dated August 17, 2005.[2] The victim's statement appeared in the police report which was an exhibit admitted into evidence by stipulation of both attorneys to provide a factual basis in support of defendant's three no contest pleas. The victim's statement also appeared in the

---

[2] The trial court issued an opinion and order on August 17, 2005, denying Petitioner's request for substitute appellate counsel and for a *Ginther* hearing. In ruling on Petitioner's motion, the trial court stated in part:

> Any trial motion as to the scoring of OV 7 at 50 points would also be futile. This issue was already decided against defendant by the trial court at the sentencing hearing. At the plea hearing, the police report was admitted as Exhibit One to substantiate the no-contest pleas. That police report contained the statement of the victim that defendant threatened to kill the victim's mother if the victim told anyone about defendant's sexual assaults. Defendant could not successfully challenge an exhibit admitted with his consent by attempting to present new evidence to demonstrate that the victim lies when she talks to public officials.

(8/17/05 Muskegon County Cir. Ct. Op. & Ord., 2, docket #1-10.)

presentence report. That police report constituted a preponderance of the evidence as to the issue of scoring OV 7. Also, People v Endres, 269 Mich App 414 (2006) does not stand for the proposition that OV 7 may not be scored at 50 points when a defendant threatens a minor child with the death of her mother of the child reveals defendant's sexual assaults against the child.

***

As to defendant's argument regarding "double counting," defendant has presented no authority in support of his position that, in computing the Michigan sentencing guidelines, a single factor cannot be used in scoring more than one prior record variable and/or offense variable. PRV 7 was properly scored at 20 points because there three convictions of Second Degree Criminal Sexual Conduct are concurrent convictions. In People v. Hendrick, 261 Mich App 673, 683 (2004), the court did state as follows: "PRV 7 (subsequent or concurrent felony convictions) accounts for conduct occurring after the underlying crime was committed, but only assesses points for subsequent or concurrent felony convictions." From the context of this language, it is clear that the word "after" refers to the term "subsequent", not "concurrent"; i.e., the court was not holding that concurrent felony convictions could be scored only if they occurred after the underlying crime. OV 13 was properly scored at 25 points because defendant committed at least three criminal sexual conduct felonies against his stepdaughter within a five-year period.

(10/19/06 Muskegon County Cir. Ct. Op. & Ord., 2-4, docket #1-2.)

Petitioner clearly fails to raise a meritorious due process claim arising from the trial court's calculation of the sentencing guidelines. The trial court did not rely on any false information in scoring the sentencing guidelines. Rather, Petitioner's disagrees with the trial court's legal decision to score fifty points for OV 7 based upon Petitioner's threat to kill the victim's mother. Such state-law legal decisions do not implicate any federal right and are nor reviewable in habeas corpus. Moreover, Petitioner's claim that the trial court used his past and present convictions in scoring more than one OV or PRV fails to implicate the Due Process Clause. Petitioner, therefore, is not entitled to habeas corpus relief.

> II.   Right to Counsel at Sentencing Proceedings: Ground III

Petitioner contends that he was denied the right to counsel when the prosecutor was permitted to confer privately with the sentencing judge without Petitioner or his attorney being present. The Sixth Amendment secures to a defendant who faces incarceration the right to counsel at all "critical stages" of the criminal process, including sentencing. *See United States v. Wade*, 388 U.S. 218, 224 (1967); *King v. Bobby*, 433 F.3d 483, 490 (6th Cir. 2006); *French v. Jones*, 332 F.3d 430, 439 (6th Cir. 2003). At the sentencing hearing, the prosecutor stated: "Your Honor, the only thing I would say is I know we discussed this with the Court prior to today. There is an unpublished case called People versus David Shower which is directly on point to what the Court has indicated, that 50 points is an appropriate scoring . . ." (SH Tr., 4.) Petitioner concludes from the prosecutor's statement that the prosecutor and the trial court had an *ex parte* discussion regarding the scoring of offense variables Petitioner's case. In rejecting Petitioner's claim, the trial court stated:

> [Petitioner's] conclusion is incorrect. Any discussion the court may have had regarding the proper scoring of OV 7 would have occurred in the presence of both the prosecutor and defense counsel. First, defense counsel heard the prosecutor's statement and raised no objections, apparently because he was aware that the prosecutor was not referring to any improper meeting with the judge. Second, the prosecutor said "we" discussed the matter with the court. "We" refers to more than one person, which certainly implies that two attorneys would have participated in any prior discussion regarding sentencing or the scoring of the sentencing guidelines. Finally, while the court has no independent recall of the event, it has never been the court's practice to violate the Canons of Ethics by having improper <u>ex parte</u> discussions with an attorney. The court notes in passing that it is equally possible that the prosecutor was referring to a previous discussion as the correct scoring of OV 7 which occurred in a totally different case involving that same prosecutor and defense counsel, and the judge, but with a different defendant.

(10/19/06 Muskegon County Cir. Ct. Op. & Ord., 2-4.) Thus, the trial court explicitly stated that it did not have an *ex parte* meeting with the prosecutor regarding Petitioner's case. Petitioner has failed to offer any evidence that such a meeting occurred other than the prosecutor's statement at the sentencing hearing, which is amenable to other constructions. As noted by the trial court, the

prosecutor's use of "we" is more reasonably construed as a reference to a discussion between the court, defense counsel and the prosecutor in Petitioner's case or a different criminal case. Consequently, Petitioner cannot establish a violation of his Sixth Amendment rights.

### III. Ineffective Assistance of Counsel: Ground II

Petitioner claims that his trial counsel was ineffective when he: (1) failed to object to an improper meeting between the prosecutor and judge regarding scoring of the sentencing guidelines; (2) failed to investigate OV 7 and did not raise the issue of "double counting"; (3) failed to object to the prosecutor's use of an unpublished opinion; (4) failed to present mitigating evidence to cast reasonable doubt upon the victim's allegations; and (5) gave false information to Petitioner regarding the use of police report that allowed prejudicial evidence to be placed on the record. Petitioner further claims that his appellate counsel was ineffective for failing to raise the issue of "double counting" in Petitioner's direct appeal.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel. To establish a claim of ineffective assistance of counsel, the petitioner must prove: (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689. The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690. Even if a court determines that counsel's performance was

outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691. "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). A claim of ineffective assistance of counsel presents a mixed question of law and fact. Accordingly, the Court must apply the "unreasonable application" prong of § 2254(d)(1). *See Barnes v. Elo*, 339 F.3d 496, 501 (6th Cir. 2003).

In denying Petitioner's motion for relief from judgment, the trial court stated:

> The trial court further finds that defendant was not denied effective assistance of trial counsel. Trial counsel did not object to an "improper hearing" between the prosecutor and the trial judge as to the scoring of the offense variable because there was no improper hearing. The only discussion as to offense variables took place on the record in the presence of defendant, defense counsel, and the prosecutor or, possibly, in chambers in the presence of both attorneys. Counsel did raise the issue of OV 7, but could not negate the facts in the police report which established that OV 7 was correctly scored. Defendant's argument that defense counsel failed to investigate to find exculpatory evidence is without merit. Defendant fails to identify what the exculpatory evidence could possibly have been. Defense counsel's failure to raise the issue of "double counting" is justified by the fact that the argument has no support under Michigan law. Defense counsel was not remiss in failing to object to the prosecutor's citation of an unpublished Michigan Court of Appeals opinion during sentencing. While unpublished opinions are not binding precedent, trial courts have discretion to consider them and follow their holdings. See Steele v Dep't of Correction, 215 Mich App 710, 714, fn. 2 (1996). Defendant fails to identify what "mitigating evidence" could have been presented to convince the court to impose a lower sentence. Indeed, if it were not for the sentencing guidelines, this court might have very well imposed a much higher sentence in light of defendant's egregious behavior toward the victim.
>
> \*\*\*
>
> Defendant's final argument as to ineffective assistance of trial counsel asserts that defense counsel gave defendant erroneous information regarding use of the police report. Defendant argues that he was advised by defense counsel that the police report would be used only for purposes of establishing the sexual conduct necessary to provide a factual basis for acceptance by the court of the three pleas of

> no contest. He claims that he did not understand that the court could consider all information in the police report, including the victim's statement that defendant threatened to kill her mother if the victim told her mother about the sexual assaults.
>
> Defendant's argument is without merit. At sentencing, defendant stated that he had read the presentence report and had no additions or corrections. The presentence report at pages 3-4 contains the victim's statement that the defendant threatened to kill the victim's mother if the victim told her mother about the sexual assaults. Thus, the presentence report also contained an uncontroverted basis which established the threat and which justified scoring OV 7 at 50 points. This scoring would have taken place even without the admission of the police report.
>
> The courts finds that defendant received effective assistance of appellate counsel. Appellate counsel is not required to raise issues without merit. Indeed, appellate counsel is not required to raise all issues of merit, but may choose among issues as a matter of strategy. People v Reed, 449 Mich 375, 391 (1995).

(10/19/06 Muskegon County Cir. Ct. Op. & Ord., 2-4.)

The trial court's decision was not a unreasonable application of *Strickland*. Petitioner claims that counsel failed to object to an improper meeting between the prosecutor and judge and failed to object to the trial court's scoring of the sentencing guidelines. This Court addressed Petitioner's underlying claims above and found them to be without merit. Defense counsel had no reason to believe that the trial court and the prosecutor had an *ex parte* meeting regarding Petitioner's case. Moreover, Petitioner's claims regarding the scoring of the sentencing guidelines are not supported by Michigan law. Counsel's failure to make a meritless objection does not constitute ineffective assistance of counsel. *See Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Turnpaugh v. Lecreaux*, No. 96-1299, 1997 WL 49959, at *2 (6th Cir. Feb. 6, 1997); *A.M. v. Butler*, 360 F.3d 787, 795 (7th Cir. 2004); *James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994); *Koch v. Puckett*, 907 F.2d 524, 527 (5th Cir.1990); *United States v. Wright*, 573 F.2d 681, 684 (1st Cir. 1978). For the same reasons, appellate counsel was not ineffective for failing to raise the issue of "double counting" in Petitioner's direct appeal.

Petitioner further claims that counsel failed to object when the prosecutor cited to an unpublished case at the sentencing hearing and failed to provide the defense with a copy of the opinion in violation of MICH. CT. R. 7.215(c). As discussed by the trial court, unpublished decisions are not binding precedent, but may be considered by the state court in reaching it decision. Thus, it was not improper for the prosecutor to cite an unpublished case to the trial court. Moreover, the court rule cited by Petitioner is a rule of appellate procedure and does not necessarily apply in the state trial court. Even assuming the prosecutor was required by the state court rules to provide a copy of the opinion to the court and defense counsel, defense counsel's failure to object to the omission does not constitute deficient performance. Both the trial court and defense counsel have access to the unpublished opinions of the Michigan Court of Appeals and could obtain their own copies.

Petitioner also contends that trial counsel failed to present mitigating evidence to cast reasonable doubt upon the victim's allegations. Petitioner claims that he told his trial counsel that the victim had made similar allegations against him in the past, but when questioned by Protective Services, the victim acknowledged that she had lied. Petitioner asserts that counsel was ineffective for failing to obtain a copy of the Protective Services report pertaining to the victim's previous accusation and presenting it to the trial court in an effort to reduce Petitioner's sentence. Petitioner bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy. *Strickland*, 466 U.S. at 689 (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack). Assuming counsel could have obtained the report described by Petitioner, counsel may reasonably have decided not to pursue the evidence. At that stage of the

proceedings, Petitioner had pleaded nolo contendere to sexual misconduct with regard to his stepdaughter, and he had been found guilty. The fact that the victim made previous accusations against Petitioner may have been damaging to Petitioner's case, despite the fact that the victim allegedly recanted. Petitioner has failed to overcome the presumption that counsel made a strategic decision not to pursue the evidence.

Finally, Petitioner claims that his trial counsel gave false information to Petitioner regarding the use of police report that allowed prejudicial evidence to be placed on the record. According to Petitioner, trial counsel told him that the police report only would be used for providing a factual basis for the sexual contact that occurred between Petitioner and the victim. Counsel did not inform Petitioner that other information contained in the report, i.e., Petitioner's alleged threats to the victim that he would kill the victim's mother if she reported their sexual activities, could be used against him in sentencing. As stated by the trial court, the same information regarding Petitioner's threats was contained in the PSIR, which Petitioner approved at the sentencing hearing. Thus, even if the police report had not been admitted at the plea hearing, information regarding Petitioner's threats was presented in the PSIR. Consequently, Petitioner cannot show that he was prejudiced by counsel's conduct.

### IV. Assessment of Attorney Fees: Ground IV

In his fifth ground for habeas corpus relief, Petitioner claims that the trial court improperly assessed attorneys fees of $450.00 as part of the judgment of sentence. Citing Michigan law, Petitioner contends that an assessment of attorneys fees should not be included in the judgment of sentence. Rather, such an assessment must be contained in a separate order. Petitioner further contends that the trial court failed to consider his ability to pay when imposing the assessment, as

required under Michigan law. Plaintiff's claim is based exclusively on state law. The extraordinary remedy of habeas corpus lies only for a violation of the Constitution. 28 U.S.C. § 2254(a); *see also Estelle v. McGuire*, 502 U.S. 62 (1991). Plaintiff does not allege that the $450.00 assessment violates his federal constitutional rights. His claim, therefore, is not cognizable on habeas review.

### Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of the State of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment consistent with this Opinion will be entered.


Dated:  October 30, 2008             /s/ Paul L. Maloney
                                     Paul L. Maloney
                                     Chief United States District Judge